IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAULETTE B. GIGLI,<br>　　　Plaintiff | :<br>:<br>: |
| vs. | :  Case No.: 3:06-CV-01428-TIV<br>: |
| PALISADES COLLECTION, LLC,<br>WOLPOFF & ABRAMSON, LLP,<br>And BRUCE H. CHERKIS, ESQUIRE<br>　　　Defendants | :<br>:<br>:<br>: |

**PLAINTIFF'S BRIEF CONTRA DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**I.  COUNTER STATEMENT OF THE FACTS**

　　The Plaintiff, Paulette Gigli ("Gigli") filed the instant action seeking damages under the Fair Debt Collection Practices Act ("FDCPA"), Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA") and for Wrongful Use of Civil Proceedings ("Wrongful Use") following the dismissal of a District Justice Complaint filed against her by Palisades Collection, L.L.C., ("Palisades") through its attorney, Bruce H. Cherkis, Esquire ("Cherkis") who is employed by Wolpoff & Abramson ("W&A").

　　When W&A first attempted to sue Gigli it sent the suit papers to the wrong District Justice Court that did not have proper venue or jurisdiction over Gigli and the suit papers were returned to W&A (Cherkis dep. pgs. 57-58).  On May 20, 2005 Palisades filed suit against Gigli in the Court of District Justice Andrew B. Zelonis docketed to Number CV-133-05 (Exhibit "A" to Complaint).  This lawsuit will hereafter be referred to as the "underlying action". Attached to this Brief as Exhibit 1 are the referenced portions of the Cherkis deposition and Exhibits to that deposition. Attached to this Brief as Exhibit 2 are the referenced portions of the Defendants' Replies to the Plaintiff's Requests for Admissions.

　　The information concerning the underlying action set forth in the following five paragraphs is from the contents of the May 20, 2005 complaint which is attached as Exhibit 3 to the Cherkis deposition.

　　The Plaintiff is listed as Palisades, Assignee of Bank One.  However, the only

1

evidence the Defendants have of an Assignment in this case are purported assignments from Sherman Acquisition, L.L.C. directly to Palisades Collection, L.L.C. of accounts listed in Exhibit 1 to the Bill of Sale and Assignment.  (Exhibit 2 to Cherkis Dep.).  The Defendants did not know whether any account of Gigli's was assigned from Bank One to Sherman Acquisition (Cherkis Dep. Pgs. 65-66). Cherkis didn't review any purported assignment between Bank One and Palisades or between Bank One and Sherman Acquisition of a Gigli account before commencing the underlying action. (Cherkis Dep. Pgs. 65-66). Cherkis never reviewed Exhibit 1 to the Bill of Sale and Assignment which purportedly contained the accounts assigned to Palisades by Sherman Acquisition to see if the account of Gigli's on which the underlying action was filed was included in those assigned. (Cherkis Dep. Pgs. 67-68).

The Complaint in the underlying action averred that the balance due as of May 20, 2005 was $4705.14 exclusive of interest which was claimed at the rate of 18% from August 31, 2001 in the amount of $3,127.82 for a total amount claimed of $7,832.96. Cherkis personally reviewed the contents of the Complaint, personally affixed his signature to it, (Cherkis Dep. p. 60) and signed a Verification to it stating that "I hereby verify that the facts set forth in this Complaint are true and correct to the best of my knowledge, information and belief based upon information provided by the Plaintiff", However, Cherkis did not review or perform any calculations to determine the accuracy of the balance claimed (Cherkis Dep. p. 70) but rather took the principal balance of $4,705.14, in part,  from a source which Defendants have refused to disclose on attorney-client privilege and/or attorney work-product objections. (Cherkis Dep. Pages 32-33, 70) and in part from a credit report which showed that amount as owing to First USA Bank.  However, Cherkis didn't know the accuracy of the information reported to the credit bureau or its source.  (Cherkis Dep. pgs. 79-80).   Cherkis had no information at the time of filing the underlying action to support the entitlement to the 18% interest claimed in the underlying action but relied on another attorney of W&A, Amy Doyle, who is not an employee of Palisades, contrary to his personal verification of the facts in the Complaint. (Cherkis Dep. pgs. 72-73).

Palisades and W&A have admitted that they didn't have a payment history when the underlying action was filed or any proof that Gigli used a credit card after May 20,

2001. Without such information, the underlying action would have been dismissed on Statute of Limitations grounds. (Replies to Request for Admissions 11-12).  In fact, Palisades closed the account due to the expiration of the statue of limitations on July 25, 2005. (Cherkis Dep. Exhibit 5).

Defendants aver in the Complaint in the underlying action that Gigli utilized the revolving credit account to obtain extensions of credit which she used for the purchase of products, goods and/or obtaining services from Plaintiff's assignor.  However, despite this averment and his verification, Cherkis did not know whether Gigli used the account when the underlying action was filed. (Cherkis Dep. Pgs. 71-72).  Indeed both Palisades and W&A have admitted that they had no sales slips or evidence of debits signed by Gigli indicating she personally used the account when they participated in the filing of the underlying complaint. (Palisades Reply to Request for Admissions 12, W&A Reply to Request for Admissions 13).

The Complaint in the underlying action avers that Gigli was subject to terms and conditions of a revolving credit account.  However, Cherkis did not review any credit card agreement before filing the underlying action and the Defendants have produced none despite requests for same in this case. (Cherkis Dep. p. 48).  In fact, none of the Defendants had possession of a credit card agreement signed by Gigli at the time of the filing of the underlying complaint. (Reply to Request for Admissions 6).

Palisades did not review the underlying Complaint prior to its filing. (Palisades Reply to Request for Admissions 14).

The source of the initial information that a person purportedly owes a debt that W&A is assigned to collect and the amount allegedly owed is referred to as "client information" by Cherkis and the accuracy of the information provided is taken at face value.  (Cherkis Dep. pgs. 31-32).

In this action, Gigli has averred that she is not legally liable for the damages claimed in the underlying action. (Complaint Paragraph 13).  She has averred that the Defendants have falsely represented the character, amount and legal status of the debt in the underlying action as well as Palisades standing to collect the debt.  (Complaint Paragraphs 15, 40, 54).

Gigli has further averred that the Defendants in the underlying action attempted to collect amounts, including interest, to which Palisades was not entitled. (Complaint Paragraphs 16, 41, 55). Gigli has averred similar violations of the FCEUA against the Defendants as those previously stated under the FDCPA (Complaint Paragraphs 19, 30, 44).

With regard to the claims asserted for violation of Wrongful Use of Civil Proceedings, Gigli has averred that the Defendants participated in the filing of the underlying action without admissible evidence that Gigli owed Palisades the amounts claimed (Complaint Paragraphs 22, 47) and filed the underlying action in a grossly negligent manner and without probable cause. (Complaint Paragraphs 25, 49). Gigli further avers that Cherkis did not have sufficient documentary substantiation for him to reasonably believe that the underlying complaint could be validly filed against Gigli and that he filed the underlying action without probable cause. (Complaint paragraphs 58-59).

Gigli has averred that W&A failed to properly supervise Cherkis to ensure he complied with Federal and State laws including the FDCPA, the FCEUA and Wrongful Use of Civil Proceedings and more specifically supervise his initiation of litigation of the underlying action against Gigli. (Complaint Paragraphs 34-35). In his deposition, Cherkis testified that the training he received since he started with W&A in 1988 consisted of being "mentored" by the attorney he replaced for 3 months and taking a "collection class" one time in 1996 but that he did not take a compliance course provided to new attorneys by W&A. (Cherkis Dep. pgs. 24, 28, 29).

## II.   STATEMENT OF QUESTIONS INVOLVED

A.  Is the Court's consideration of the Affidavit of Seth Berman in determining the Defendant's Motion for Summary Judgment precluded by the Affidavit's failure to comply with FRCP 56(e)(1)?

SUGGESTED ANSWER:  Yes.

B.  Does evidence that Defendants participated in the filing of the underlying action against Gigli when Palisades lacked standing to sue, had no admissible

substantiation for the interest claimed and no proof to counter a statute of limitations defense, constitute violations of the FDCPA despite Gigli's failure to timely demand validation of the debt?

      SUGGESTED ANSWER:   Yes.

      C.  Is Palisades directly liable under the FCEUA as a "creditor"?

      SUGGESTED ANSWER:   Yes.

      D.  Does evidence that the Defendants participated in the filing of a collection suit against Gigli without probable cause constitute Wrongful Use of Civil Proceedings even though she failed to timely demand validation of the debt?

      SUGGESTED ANSWER:   Yes.

      E.  Are damages that result to an adverse party through litigation commenced in contravention of Pennsylvania and Federal laws regulating litigation practices and fair debt collection recoverable from the adverse party's law firm where there is evidence the law firm failed to provide training to its lawyers to keep them abreast of recent developments in the law?

      SUGGESTED ANSWER:    Yes.

### III.  ARGUMENT

      A.  The Court's consideration of the Affidavit of Seth Berman in determining the Defendant's Motion for Summary Judgment is precluded by the Affidavit's failure to comply with FRCP 56(e)(1).

      The Defendants' Motion for Summary Judgment is supported in part by an Affidavit of Attorney Seth Berman attached to the Motion.  In his Affidavit, Berman states that he is general counsel of Palisades and that Palisades acquired through assignment all rights, title and interest in a credit card debt originally incurred by Plaintiff with First USA.  An Affidavit filed in support of a Motion for Summary Judgment must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant is competent to testify in the matters stated. Furthermore, if a paper or part of the paper is referred to in an Affidavit, a sworn or certified copy must be

attached to or served with the Affidavit {FRCP 56(e)(1)}.  The Affidavit of Seth Berman fails to meet any of these criteria for consideration.  Attorney Affidavits that are unsupported allegations setting forth ultimate or conclusory facts or conclusions of law are insufficient to either support or defeat Motions for Summary Judgment *State Farm Fire and Casualty Company vs. Woods* 925 F.Supp. 1174, affd. 129 F.3d. 607 (ED TX 1996).  Furthermore, an Affidavit of an attorney which did not comply with the personal knowledge requirement can not be considered in deciding a Summary Judgment Motion *Taylor vs. Collins* 574 F.Supp. 1554 (DC Mich. 1983). Since the Berman averment concerning the acquisition by Palisades of the debt is clearly based on a paper and that paper is not attached and Berman is general counsel of Palisades and not custodian of any of its business records, his Affidavit is not based on personal knowledge and the averments in the Affidavit cannot be considered in adjudicating the Defendants' Motion for Summary Judgment.

  B. Evidence that Defendants participated in the filing of the underlying action against Gigli when Palisades lacked standing to sue, had no admissible substantiation for the interest claimed and no proof to counter a statute of limitations defense, constitute violations of the FDCPA despite Gigli's failure to timely demand validation of the debt.

  The Defendants claim that they cannot be held liable for violations of the FDCPA because they sent the Plaintiff the required notice to allow Gigli to demand validation of the debt but she failed to timely do so.  The pertinent portion of this section provides that the Notice shall contain:

> A statement that unless the consumer, within 30 days after the receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector. {15 USC 1692g(a)(3).}

Also included within this section of the FDCPA is:

> **Admission of liability** – the failure of a consumer to dispute the validity of a debt under this section may not be construed by any Court as an admission of liability by the consumer.  {15 USC 1692g(C).}

In support of their contention, Defendants have cited the cases of *Harvey v. Great Seneca Financial Corporation* 453 F.3d.324, (6th Cir. 2006); *Clark v. Unifund CCR Partners,* 2007 WL 1258113 (WD PA 2007); *Richmond v. Higgins* 435 F.3d. 825 (8th Cir. 2006); *Bleich v. Revenue Maximization Group, Inc.* 233 F.Supp.2d. 496 (SD NY 2002) and *Derre v. Javitch* 413 F.Supp.2d. 888 (SD OH 2006).

Each of these cases is factually distinguishable from the case at bar as is set forth hereafter in detail.

In *Harvey*, supra, the Debtor alleged that the FDCPA was violated because the underlying debt collection suit was filed without the means of proving the existence, amount, or ownership of the debt. Importantly, however, the Debtor never denied that she owed the debt nor claimed that the Defendants had misstated or misrepresented the amount owed or had failed to undertake a reasonable investigation into the debt's existence. The District Court dismissed the Debtor's FDCPA suit pursuant to Rule 12(b)(6) and the Sixth Circuit affirmed. Besides the failure to plead any alleged misrepresentations in the underlying action, the District Court questioned whether Harvey was averring in the FDCPA action that the Defendant merely didn't have the means to prove the underlying Complaint at the time it was filed or whether it would never have such proof.

In the case at bar, Gigli has alleged that she was not legally liable for the claims in the underlying action. Moreover, this averment is supported by substantial evidence in the record. Specifically, despite averring in the underlying action that Bank One assigned the claim to Palisades, the Defendants have no proof that this direct assignment occurred. At most, there is evidence that some unspecified accounts were assigned from Sherman Acquisition to Palisades but no evidence of any assignment from Bank One directly to Palisades much less that a specific Gigli account on which the underlying action was based was one of the enumerated accounts that was part of the assignment. A misrepresentation that a debt buyer was a holder in due course of a credit card account constituted a false representation pursuant to 15 USC 1692e(2) in *Hartman v. Asset Acceptance Corp.* 2004 US Dist. LEXIS 24845 (SD OH 2004).

Furthermore, in the case at bar, the Defendants have no evidence to refute a statute of limitations defense of Gigli. Filing suit on a debt for which the statute of limitations has expired is a false representation of the character of the debt. *Kimber v. Federal Financial Corp.* 668 F.Supp.1480 (MD AL 1987).

In addition, the Defendants sought 18% interest in the underlying claim without a credit card agreement or other basis for entitlement to that interest. Importantly, it has now been over 2 years since the underlying action was filed. Documentary substantiation of the claim against Gigli has been requested both informally and formally through discovery since that time and the Defendants have been unable to supply any admissible evidence proving that Gigli was a party to a credit agreement with Bank One or that Palisades was entitled to the amounts claimed in the underlying claim. Therefore, unlike in *Harvey*, the Defendants in the current case did not have the means to prove the underlying action both when it was filed as well as any time thereafter.

In *Richmond v. Higgins*, supra, the collection activity of Higgins did not include filing suit against Richmond. Furthermore, Richmond's defense to the collection action was affirmative in nature (that the Higgins creditor was precluded from collecting more than the amount of the Medicaid reimbursement) rather than one based on false representations in a Complaint of the right to payment and amounts due as in the case at bar.

Likewise, in *Bleich v. Revenue Maximization Group, Inc.,* supra, the complained of collection activity did not involve the filing of a suit against the Debtor. In this case, prior to the debt collector becoming involved, Bleich had sent proof to the creditor of payment of a $25.00 hospital bill. However, the Debtor failed to dispute the validity of the debt with the debt collector. He responded to the debt collector's validation notice by filing the FDCPA suit. In granting the debt collector's Motion for Summary Judgment, the Court held that an allegation that a debt is not owed, standing alone is insufficient for a false and misleading practices claim under the FDCPA. By contrast, as set forth above, in the case at bar, Gigli has averred and set forth evidence that she has no obligation to Palisades, due to standing as well as presented evidence that the claims set forth in the underlying complaint were false.

In *Clark v. Unifund CCR Partners,* supra, Clark sought to certify a class action alleging that Unifund falsely averred in the underlying collection complaint that Clark applied for and received a Citi Platinum Select Credit Card issued by Unifund. However, elsewhere in the underlying complaint, Unifund was correctly identified as an assignee of Citi Bank and attached to the underlying Complaint as an exhibit was a Citi Bank Card agreement. Therefore, this averment was not considered a false representation. Additionally, Clark complained that the underlying complaint had no documentation of the debt attached other than an Affidavit of Unifund which asserted that the claimed amount was owed. However, in addition to that Affidavit, a statement was also provided which identified and evidenced the debt. In contrast, in the case at bar, no admissible affidavit or credit card account statement has been produced to evidence the amount claimed in the underlying action. Moreover, the false representation of the legal standing of Palisades to file the underlying Complaint has been directly plead and proven without any ambiguity.

Finally in *Derre v. Javitch,* supra, the debtor complained that the FDCPA was violated merely because the creditor and collector filed the underlying action without having documented proof of the debt owed intending to dismiss it if verification of the debt was requested. However, Deere did not allege in the FDCPA complaint that the underlying complaint contained a false representation about the existence or the amount of the debt unlike the case at bar. The underlying complaint was dismissed under Rule 12(b)(6).

In summary, all the cases cited by the Defendants in which the FDCPA claims were dismissed lacked proof or, in most cases even averments in the FDCPA complaint, of false representations in the underlying collection activity. Contrary to the Defendants' reading of the Plaintiff's complaint in this case, by averring in paragraph 12 of her Complaint that she requested documents substantiating the viability of the underlying action on two occasions from W&A which failed to provide such documentation, Gigli is not contending that the failure to supply the documentation is the basis for the FDCPA complaint. Rather, that failure is evidence that the Defendants failed to possess or even review such documentation prior to filing the underlying Complaint which is pertinent to Gigli's claims for Wrongful Use. The Defendants' contention that Gigli's failure to

timely dispute the validity of the debt immunizes the Defendants from any potential liability under the FDCPA, regardless of the averments in a collection complaint filed thereafter, belies common sense and is not supported by any case law.  The logical extension of this argument is that a debt collector could send the required validation notice claiming any amount is owed by any person.  Should that person fail to timely dispute the validity of the debt, Defendants' argument suggests the debt collector, creditor and their attorney could commence a collection suit without any risk of FDCPA or other liability so long as the amount claimed due in the suit was consistent with the amount claimed due in the validation letter. If Debtors were deprived of such a remedy, debt collectors and their attorneys would be encouraged to file such suits regardless of the validity of the claim.  Allowing such a practice would fly in the face of the stated purpose of the FDCPA of eliminating abusive debt collection practices by debt collectors.

    C.   Palisades is directly liable under the FCEUA as a "creditor".

In their Brief, Defendants argue that Gigli's claims against Palisades are based on vicarious liability.  The Defendants' position is not supported by the averments of the Plaintiff's Complaint nor the definition section of the FCEUA.

In the FCEUA a "creditor" is defined as a person, including agents, servants or employees conducting business under the name of a creditor and within this Commonwealth, to whom the debt is owed or alleged to be owed. (73 Pa.C.S.A. 2270.3). The FCEUA defines unfair or deceptive debt collection acts or practices for debt collectors as those which violate any provisions of the FDCPA.  With regard to **creditors**, it specifies those acts and practices that are unlawful including those claimed by Gigli in Count IV, paragraph 30 of her Complaint in which she alleges that Palisades falsely represented the character, amount and legal status of the alleged debt it claimed was owed by Gigli in the underlying suit in violation of 73 Pa.C.S.A. 2270.4(b)(5)(ii).

This liability of Palisades is not dependent on a determination that W&A and/or Cherkis is liable under the FCEUA.

    D.   Evidence that the Defendants participated in the filing of a collection suit against Gigli without probable cause does constitute Wrongful Use of Civil Proceedings even though she failed to timely demand validation of the debt.

In their Brief, the Defendants argue that the Plaintiff's failure to timely request a validation of the debt also immunizes them from a claim for Wrongful Use of Civil Proceedings after they participated in the filing of the underlying claim and the proceeding was terminated in favor of Gigli. As set forth previously in the Plaintiff's argument in opposition to that assertion with regard to the FDCPA claims, no cases have interpreted the Wrongful Use statute in that manner.

Wrongful Use of Civil Proceedings, also known as the Dragonetti Act, is the codification in Pennsylvania of the common law torts of malicious prosecution and abuse of process and is set forth at 42 Pa.C.S.A. 8351 et. seq. In pertinent part, it requires that for a person to be liable for wrongful use of civil proceedings he must take part in the procurement, initiation or continuation of civil proceedings against another while acting in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discover, joinder of parties or adjudication of the claim in which the proceedings are based. It also requires that the proceedings be terminated in favor of the Defendant in the underlying case. {42 Pa.C.S.A. 8351(a)(1).}

Contrary to the assertion in the Defendants' Brief, the Plaintiff in a wrongful use case need not directly prove that the Defendants acted for an improper or malicious purpose. Despite Cherkis's statement in his Affidavit of a non-malicious purpose in filing the underlying suit, the Plaintiff in a wrongful use of civil proceedings action need not obtain the Defendant's outright confession of improper purpose. An improper purpose may be inferred where the action is filed without justification. <u>Gentzler v. Atlee</u> 660 A.2d. 1378, 1385 (Pa. Super. 1995). Furthermore, such a claim can successfully be brought either if the underlying action was filed without probable cause or in a grossly negligent manner. <u>Bannar v. Miller</u> 701 A.2d. 242 (Pa. Super. 1997).

The wrongful use statute defines probable cause as a reasonable belief in the existence of facts upon which the claim is based and either: 1.) a reasonable belief that under those facts a claim may be valid under the existing or developing law or; 2.) belief to this effect in reliance upon the advise of counsel sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or 3.) belief as an attorney of record in good faith that his procurement, initiation or continuation of a

civil case is not intended to merely harass or maliciously injure the opposite party. (42 Pa.C.S.A. 8352.)

The Plaintiff suggests that the evidence in the case at bar clearly shows both a lack of probable cause for the initiation of the underlying action as well as gross negligence by the Defendants involved.

The underlying action was based on a purported contract.  Yet, the Defendants filed the underlying action without possession of the contract or without even having reviewed it.  Any entitlement to the interest claimed in the underlying action would have been established by the contract.  Yet, despite not having the contract, the Defendants filed a Complaint asserting an entitlement to 18% interest.  The underlying Complaint was filed with Palisades as Plaintiff and assignee of Bank One.  Yet, the Defendants had no admissible information to substantiate that Bank One account number 5422702008393951 set forth in the next to last page of Exhibit 1 to the Cherkis deposition was an account owned by Palisades at the time it filed the underlying suit.  The Defendants had not reviewed any alleged periodic statements that would give guidance as to whether the amounts demanded in the underlying suit were accurate.

When confronted with these multiple deficiencies, the Defendants quickly dismissed the underlying complaint.

Finally, not only did the Defendants fail to possess evidence sufficient to make out a prima facie case of liability on the underlying debt, the record is devoid of any attempt to investigate what evidence they did have and to try to obtain what was necessary before filing the underlying complaint.  Such indifference regarding the pre-filing investigation was harshly criticized by the Pennsylvania Supreme Court in *Thunberg v. Strause* 545 Pa. 607, 682 A.2d. 295 (1996), a case brought for counsel fees under 42 Pa.C.S.A.  2503(9) but which used the same standard for fee awards as those for recovery under wrongful use.


E.  Damages that result to an adverse party through litigation commenced in contravention of Pennsylvania and Federal laws regulating litigation practices and fair debt collection are recoverable from the adverse party's law firm where there is evidence the law firm failed to provide training to its lawyers to keep them abreast of recent developments in the law

In their Brief, the Defendants argue that W&A owes no duty of care to Gigli and therefore cannot be held liable under a negligence theory.  Plaintiff suggests that such a duty is imposed by the statute governing wrongful use of civil proceedings as well as under 42 Pa.C.S.A. 2503(9) and Pa.R.C.P. 1023.1, the Pennsylvania equivalent to F.R.C.P. 11.

During his deposition, Cherkis testified that although he had been employed by W&A since 1988 his formal training in debt collection law had been almost non-existent, consisting of a taking 1 collection class in 1996, nine years before he instituted suit against Gigli in the underlying case and being mentored for 3 months by the attorney he replaced in 1988.  Plaintiff suggests that such limited training being provided by Cherkis' employer of 19 years is insufficient to insure that its attorneys have the knowledge and skill necessary to comply with the ever-changing myriad of federal and state laws and court cases regulating collection and litigation activity.

Furthermore, there is no evidence in the record that W&A even established any internal policies or procedures for its collection attorneys.  There is also no evidence that W&A had established a system to check whether the documents that would be necessary to prove a prospective collection suit in Court were available prior to allowing its attorneys, including Cherkis, to file the suit.

At a minimum, Plaintiff suggests that the Defendants have failed to show there are undisputed facts of W&A's compliance with its duties to allow summary judgment to be granted on Count V of the Plaintiff's Complaint.

### IV.   CONCLUSION

There is insufficient evidence in the record to establish that the Defendants are entitled to a judgment as a matter of law.  In fact, there is sufficient evidence in the record to establish that the Defendants violated the FDCPA by falsely representing the legal standing of Palisades to recover any sums from Gigli as well as falsely representing its entitlement to interest and the other damages claimed in the underlying action.  Moreover, the evidence in support of the Plaintiff's counts against the Defendants for

Wrongful Use of Civil Proceedings clearly shows that the underlying action was commenced without probable cause and in a grossly negligent manner. With regard to the negligence count against W&A, there is insufficient evidence in the record to show that no material facts are in dispute and that W&A is entitled to judgment as a matter of law. Therefore, for the reasons stated, Plaintiff respectfully requests that the Defendants' Motion for Summary Judgment be denied.

> **/S/ John DiBernardino**
> John DiBernardino, Esquire
> Attorney for Plaintiff
> P.O. Box 599
> Lehighton, PA  18235
> (610) 377-6617
> (610) 377-8144 – fax