IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PAULETTE B. GIGLI                                          :
                            Plaintiff                      :
                                                          :
        v.                                                :        3:CV-06-1428
                                                          :        (JUDGE VANASKIE)
PALISADES COLLECTION, L.L.C.;                             :
WOLPOFF & ABRAMSON, L.L.P.; BRUCE                         :
H. CHERKIS, ESQ.                                          :
                            Defendants                     :

## MEMORANDUM

        At issue in this litigation is the propriety of a debt collection lawsuit initiated on May 20,

2005, by Defendant Palisades Collection, L.L.C. ("Palisades"), and its attorneys, Defendants

Wolpoff & Abramson, L.L.P. ("W&A"), and Bruce H. Cherkis, Esquire, to collect a credit card

debt allegedly owed to Palisades by Plaintiff Paulette B. Gigli.  One month later – June 22,

2005 – Defendants dismissed the lawsuit voluntarily after receiving a request from Ms. Gigli's

attorney for documents substantiating the alleged debt and Palisades's standing to collect the

debt.  Claiming that Defendants improperly attempted to collect a debt for which she was not

liable, Ms. Gigli commenced this action, asserting violations of the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p; the Pennsylvania Fair Credit Extension

Uniformity Act ("FCEUA"), 73 Pa. Stat. Ann. §§ 2270.1 to .6; and the Pennsylvania Dragonetti

Act.  42 Pa. Cons. Stat. Ann. §§ 8351-8355.  Additionally, Ms. Gigli asserted a separate claim

against W&A for negligent supervision of its employee, Atty. Cherkis.[1]

Before the Court is Defendants' Motion for Summary Judgment.  (Dkt. Entry 27.)  For the reasons that follow, Defendants' motion will be granted in part and denied in part.

I. BACKGROUND

A. Factual Background

Palisades is a debt collector that acquires from other creditors or debt collectors delinquent consumer accounts hoping to realize a profit through the collection of the unpaid balances.  In attempting to collect the debt underlying this litigation, Palisades employed W&A, a law firm specializing in debt collection.  (Defs.' Statement of Material Facts ("DSMF"), Dkt. Entry 27-2, ¶ 3.)  Affiliated with the National Collection Attorney Network, W&A operates from its main office in Rockville, Maryland, and from nine regional offices located predominantly in the Mid-Atlantic region of the United States.  Mr. Cherkis is an attorney with W&A and was the attorney of record for Palisades in the underlying state court action.  Employed by W&A since 1988, Mr. Cherkis received no formal training or instruction in debt collection practice or compliance at W&A, but learned informally and on the job under the tutelage of his predecessor and W&A senior partners.  (Cherkis Dep., Ex. 1 to Pl.'s Br. Contra. Defs.' Mot. Summ. J., Dkt. Entry 29-2, at 24:21-25:8, 28:14-24.)  W&A now requires its new attorneys attend a compliance

---

[1]The Court has jurisdiction over the FDCPA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), and over the state law claims pursuant to 28 U.S.C. § 1367(a).

course, which was unavailable to Mr. Cherkis at the inception of his employment.  (Id. at 28:6-12.)

In this matter, Palisades and its attorneys were attempting to collect from Ms. Gigli the outstanding balance due on a credit card allegedly issued to her by First USA Bank, N.A. ("First USA").  There is no evidence that Ms. Gigli actually obtained a credit card from First USA. Nevertheless, Defendants allege that Palisades acquired her account from First USA through a series of transactions.  According to Brett Hildebrand, a representative of Sherman Acquisition LLC, Sherman Financial Group LLC acquired an unspecified number of "accounts" from First USA.  (Hildebrand Aff., Ex. A. to Berman Supp. Aff., Dkt. Entry 31-2, ¶ 2.)  Sherman Financial immediately transferred those accounts to Sherman Acquisition.  (Id.)  Mr. Hildebrand did not indicate when those transfers occurred.  Neither did he identify Ms. Gigli's credit card account among the "accounts" acquired from First USA.  Palisades's general counsel, Seth Berman, however, stated that those transactions happened sometime prior to September 30, 2002, and that Ms. Gigli's account was purchased from First USA.  (Berman Supp. Aff., Dkt. Entry 31-2, ¶ 5.)  Notably, Mr. Berman bases his statement on Mr. Hildebrand's affidavit.

Eventually, Sherman Acquisition transferred the First USA "accounts" to Palisades. (Hildebrand Aff. ¶ 3.)  Again, Mr. Hildebrand did not indicate the date of the transaction or specify Ms. Gigli's account as among the accounts transferred, although Mr. Berman claimed her account was acquired from Sherman Acquisition.  (Berman Supp. Aff. ¶ 6.)  According to a

Bill of Sale and Assignment dated August 13, 2004 – cited by neither Mr. Hildebrand nor Mr.

Berman – Sherman Acquisition "assign[ed] [to Palisades] all rights, title and interest of

[Sherman Acquisition] in and to those certain Charged-off Accounts described in Exhibit '1'

attached hereto and made part hereof."  (Bill of Sale & Assignment, Ex. 2 to Cherkis Dep., Dkt.

Entry 29-3.)  The Bill of Sale and Assignment itself provides no details about the "Charged-off

Accounts."  Moreover, "Exhibit 1" referred to in the Bill of Sale and Assignment is missing from

the record.  It is thus impossible to ascertain whether Ms. Gigli's account was one of the

"Charged-off Accounts" assigned to Palisades.[2]  Indeed, aside from Messrs. Hildebrand's and

Berman's affidavits and the Bill of Sale and Assignment, there is nothing in the record to

corroborate any of the aforesaid transactions.

Meanwhile, on September 30, 2002, First USA changed its name to Bank One,

Delaware, National Association ("Bank One").  (DSMF ¶ 2.)  During the debt collection process,

Palisades identified itself as the assignee of Bank One and indicated the account at issue

originated with Bank One.

Having purportedly acquired Ms. Gigli's credit card account, Palisades referred the

account to W&A for collection.  Palisades transmitted account information to W&A

---

[2]The Bill of Sale and Assignment also states that the assignment was "pursuant to the terms and conditions of [the] Credit Card Account Purchase Agreement" and included "all rights of [Sherman] under the Original Seller Agreement relating to the Charged-off Accounts described in Exhibit '1.'" (Bill of Sale & Assignment (emphasis added).)  The underscored agreements are absent from the record too.

electronically, which W&A received November 12, 2004, and entered into its system November 19, 2004.  (Cherkis Dep. 31:9-15; W&A Status Report of Collection Activity ("Collection Activity Report"), Ex. 1 to Cherkis Dep., Dkt. Entry 29-3, at 21.)  Called "client information" by Mr. Cherkis, the account information apparently comprised the account number (5422702008393951), the unpaid balance ($4,705.14), and the annual interest rate (18%), along with evidence that Bank One issued to Ms. Gigli a revolving credit account subject to terms and conditions agreed to by Ms. Gigli.  (Collection Activity Report 21; Cherkis Dep. 31:6-9, 21; 32:17-20; 70:17-21; 71:7-14.)  Mr. Cherkis did not describe the client information in detail, nor is that information part of the record.  Furthermore, when Mr. Cherkis was questioned at his deposition about the source of the client information, his attorney – another W&A attorney – interposed an objection on the ground that the question concerned matters protected by the attorney-client privilege and/or work-product doctrine.  (Cherkis Dep. 33:2-17.)

Mr. Cherkis testified that he accepted "at face value" the information supplied by Palisades, but had no personal knowledge of its accuracy.  (Id. at 31:22-32:2; 71:2-4.)  Additionally, he reviewed information obtained from a "credit bureau" on November 20, 2004, that purportedly verified the original creditor, account number, and unpaid balance of Ms. Gigli's account.[3]  (Id. 79:4-19; see also Collection Activity Report 20.)  Based on his experience, Mr.

---

[3]The information obtained from the credit bureau omits the last four digits of the account number and provides a whole number as the unpaid balance.  (See Collection Activity Report 20.)  The actual entry in the Collection Activity Report reads "MINI CBI RETURNED TRADE 1:

Cherkis assumed this information to be accurate and relied on it, but he lacked personal

knowledge about its source or accuracy.  (Cherkis Dep. 79:24-80:14.)

After reviewing this information, Mr. Cherkis launched the collection process with a letter

to Ms. Gigli dated November 23, 2004.  (DSMF ¶ 4; Ex. 2 to DSMF, Dkt. Entry 27-4.)  The letter

constituted the "initial communication" to a consumer under the FDCPA, and thus contained

certain FDCPA-required disclosures.  Specifically, the letter disclosed the total balance due;

identified Palisades as creditor and assignee of Bank One; advised Ms. Gigli of her right, within

thirty days of receipt of the letter, to dispute the debt and/or to demand verification; and warned

Ms. Gigli that unless she exercised this right within thirty days of receipt of the notice, the debt

would be assumed valid.[4]  (DSMF ¶ 4; Ex. 2 to DSMF.)  It is undisputed that Ms. Gigli did not

---

FST USA BK B TYP: R ACCT# 542270200839 BAL: $4705.00."  (Id.)

[4]Under § 1692g(a), a debt collector is required to notify a consumer in writing, either in its initial communication to the consumer or within five days after its initial communication with the consumer, of

> (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

notify W&A within the thirty-day period to dispute the validity of the debt or demand its verification.  (DSMF ¶ 6.)

On January 12, 2005, Mr. Cherkis sent Ms. Gigli another letter offering to settle the debt at a discount to the total amount due.  (Id. ¶ 5.)  Receiving no response, Mr. Cherkis wrote to Ms. Gigli on March 21, 2005, "that as a result of your failure to resolve this matter, we have made the decision to initiate litigation against you."  (Ex. 4-D to Cherkis Dep., Dkt. Entry 29-3.) Ms. Gigli did not respond to this missive either.

On May 20, 2005, Mr. Cherkis filed a complaint on behalf of Palisades against Ms. Gigli in the Magisterial District Court in Tamaqua, Pennsylvania.  (DSMF ¶ 7.)[5]  In part, the complaint alleged that Palisades's assignor, Bank One, "issued a revolving credit account to [Ms. Gigli] which was subject to terms an [sic] conditions as outlined and agreed upon by Defendant, which included [payment of] interest"; that Ms. Gigli "utilized said revolving credit account . . . for the purchase of product goods and/or for obtaining services"; that the current unpaid balance on the account was $4,705.14; that Ms. Gigli refused reasonable and repeated demands for payment; and that Palisades was entitled to, among other things, "interest at the rate of 18.00% from 08/31/01 in the amount of $3127.82."  (Ex. 3-A to Cherkis Dep., Dkt. Entry

---

15 U.S.C. § 1692g(a).

[5]Actually, Mr. Cherkis first filed the complaint in early April, 2005, but in the wrong jurisdiction.  (Cherkis Dep. 58:9-10; Collection Activity Report 1, 11.)  The complaint was returned with instructions to file with the court in Tamaqua.  (Cherkis Dep. 58:12-13.)

29-3.)  The complaint, which was not reviewed by Palisades prior to its filing, (see Defs.' Resp. to Request for Admissions, Dkt. Entry 29-4, ¶ 14), was signed by Mr. Cherkis, who "verif[ied] that the facts set forth in this complaint are true and correct to the best of my knowledge . . . based upon information provided by the Plaintiff [Palisades]."  (Ex. 3-A to Cherkis Dep..)

In drafting the complaint, Mr. Cherkis relied on the "client information" for the allegations that the unpaid principal balance due was $4,705.14 and that Bank One issued Ms. Gigli a "revolving credit account" subject to terms and conditions agreed to by Ms. Gigli.  (Cherkis Dep. 70:8-12, 17-21; 71:7-14.)  But he had not reviewed, prior to preparing the complaint, the alleged credit card account agreement, the "Exhibit 1" referenced in the Bill of Sale and Assignment, or any account statements or credit receipts establishing Ms. Gigli's use of the credit card to purchase goods or services.  (Id. at 47:8-11; 48:5-20; 67:2-68:5; 71:20-72:3.)  Mr. Cherkis was not alone: none of Defendants possessed, at the time the state court complaint was filed, a revolving credit card account agreement signed by Ms. Gigli, nor did Palisades or W&A possess account records verifying the unpaid amount due or evidencing actual use of the credit card by Ms. Gigli.  (Defs.' Resp. to Request for Admissions ¶¶ 6, 11-12.)  And despite his representation that the complaint was based on information provided by Palisades, Mr. Cherkis testified that the allegation Palisades was entitled to eighteen-percent interest was based on the determination by Amy Doyle, the managing partner of W&A's Pennsylvania office.  (Cherkis Dep. 72:17-73:4; 73:19-24.)

After being served with Palisades's complaint, Ms. Gigli retained counsel to defend against the lawsuit.  Ms. Gigli explained to counsel that she did not recall opening a credit card account with Bank One or having any dealings with Palisades.  (Letter from Atty DiBernardino to Atty Cherkis, June 6, 2005, Ex. 3-B to Cherkis Dep., Dkt. Entry 29-3.)  In light of these discussions, and to prepare for an upcoming hearing, counsel wrote to Mr. Cherkis on June 6, 2005, requesting documentation substantiating the allegations in the complaint.  (Id.) Specifically, counsel sought a copy of the credit card agreement between Ms. Gigli and the original lender; copies of assignments or other instruments to evidence the transfer of the account from the original lender to Palisades and to establish Palisades's standing to assert the claim; and an itemized account history to show how the unpaid amount alleged in the complaint was computed.  (Id.)  Mr. Cherkis did not respond to this request.  Instead, on June 22, 2005, Philip C. Warholic, an attorney in W&A's Camp Hill office, notified the state court that Palisades was voluntarily dismissing without prejudice its action against Ms. Gigli.  (Letter from Atty Warholic to Judge Zelonis, June 22, 2005, Dkt. Entry 29-3.)  Judge Zelonis issued a formal order of dismissal later that day.  (See Ex. D to Compl., Dkt,. Entry 1-5.)  Following dismissal, neither Palisades nor W&A made any further attempts to collect on Ms. Gigli's alleged delinquent credit card account.

B. Procedural History

On May 17, 2006, Ms. Gigli commenced this action against Defendants by filing a writ of summons in the Court of Common Pleas of Schuylkill County, Pennsylvania.  (Notice of Removal, Dkt. Entry 1, ¶ 1.)  On June 30, 2006, she filed in that court a ten-count complaint asserting FDCPA, FCEUA, Dragonetti Act, and common law negligence claims.  (Id. ¶ 3; see also Compl., Ex. C to Notice of Removal, Dkt. Entry 1-5.)  Because some of Ms. Gigli's claims were brought under federal law, Defendants removed the entire action to this Court on July 21, 2006.  See 28 U.S.C. § 1441(a), (c).

Ms. Gigli's ten-count complaint is predicated on the state court debt collection action filed by Defendants.  Ms. Gigli asserts that Palisades (Count One), W&A (Count Six), and Mr. Cherkis (Count Nine) are liable under the FDCPA for filing a lawsuit that falsely represented the character, amount, or legal status of the debt allegedly owed by Ms. Gigli, in violation of 15 U.S.C. § 1692e(2)(A), and attempting to collect from Ms. Gigli amounts, including interest, not authorized by an agreement or state law, in violation of 15 U.S.C. § 1692f(1).  She also asserts parallel claims under the FCEUA against Palisades (Counts Two and Four) and W&A (Count Seven) based on the same conduct.  Ms. Gigli further avers that Palisades (Count Three), W&A (Count Eight), and Mr. Cherkis (Ten) violated the Dragonetti Act by initiating a civil proceeding, without probable cause and for an improper purpose, that terminated in her favor.  Finally, Ms. Gigli alleges that W&A (Count Five) negligently supervised its employee Mr. Cherkis.

On July 24, 2007, Defendants filed a Motion for Summary Judgment, (Dkt. Entry 27),

statement of material facts, (Dkt. Entry 27-2), supporting exhibits and affidavits, (Dkt. Entries 27-3, 27-4, 27-5, 27-6, 27-7, 27-8), and supporting brief.  (Dkt. Entry 28.)  Ms. Gigli filed her opposition papers August 8, 2007.  (Dkt. Entries 29 & 30.)  Defendants filed a reply brief and affidavits August 20, 2007.  (Dkt. Entry 31.)  The motion is ripe for disposition.

II. DISCUSSION

A. Summary Judgment Standard

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if proof of its existence or nonexistence might affect the outcome of the suit under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  Cont'l Ins. Co. v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982).  The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury might return a verdict in the nonmoving party's favor.  Anderson, 477 U.S. at 256-57.  Mere conclusory allegations

taken from the pleadings are insufficient to withstand a motion for summary judgment.  Schoch

v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).  Summary judgment is to be

entered "after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317,

322 (1986).

B. FDCPA Claims

After finding "abundant evidence of the use of abusive, deceptive, and unfair debt

collection practices by many debt collectors," which it viewed as inimical to societal well-being

and economic and familial stability, Congress enacted the FDCPA to eliminate and protect

consumers from those practices.  15 U.S.C. § 1692(a), (e).  To achieve that purpose, the

FDCPA regulates and proscribes certain debt collection practices employed by debt collectors.[6]

See 15 U.S.C. §§ 1692c-1692f.  Ms. Gigli's FDCPA claims implicate two such protections.

First, the FDCPA bars debt collectors from using "any false, deceptive, or misleading

representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.

Section 1692e enumerates a non-exhaustive list of conduct that constitutes false, misleading,

or deceptive representations or means.  See 15 U.S.C. § 1692e(1)-(16).  Here, Ms. Gigli

_____

[6]Defendants do not challenge their classification as "debt collectors" subject to the
FDCPA.

asserts Defendants violated § 1692e(2)(A) because their state court action "false[ly] represent[ed] . . . the character, amount, or legal status of a[] debt," including  Palisades's standing to collect the debt.  The other provision invoked by Ms. Gigli is § 1692f, which prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." Among other conduct exemplifying unfair or unconscionable debt collection means is the "collection of any amount (including any interest . . .) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Actual collection of such amounts, however, is not required, as § 1692f(1) proscribes the attempted collection of unauthorized debts.  See, e.g., Sandlin v. Shapiro & Fishman, 919 F. Supp. 1564, 1568 (M.D. Fla. 1996).  Ms. Gigli asserts Defendants violated § 1692f(1) by attempting to collect interest at eighteen percent on her purported debt that was not authorized by an agreement.

In moving for summary judgment, Defendants focus their attack on the viability of Ms. Gigli's FDCPA claims, rather than the liability of any particular Defendant.  They contend Ms. Gigli's claims fail as a matter of law for two reasons.  First, Defendants maintain that Ms. Gigli's failure to dispute the debt within thirty days of receipt of Mr. Cherkis's November 23 letter, which they insist complied with § 1692g(a), precludes her from claiming Defendants violated the FDCPA by engaging in further collection activity, including initiating the state court lawsuit. (Defs.' Mem. Law Supp. Mot. Summ. J. ("Defs.' Mem."), Dkt. Entry 28, at 5.)  Section

1692g(a)(3) requires a debt collector in its initial communication to the consumer to advise the consumer of her right to dispute the validity of the debt and warn her that, unless she exercises this right within thirty days, the debt collector may assume the debt valid.  Because Ms. Gigli took no action within thirty days, Defendants argue they justifiably assumed the debt valid and thus cannot be liable under the FDCPA for subsequently filing the state court lawsuit.  (Id.)

This contention is unpersuasive.  While Ms. Gigli has not denied failing to dispute the debt within thirty days of the November 23 letter, Defendants overstate the import of her failure.  As the court observed in Nelson v. Select Financial Services, Inc., 430 F. Supp. 2d 455, 457 (E.D. Pa. 2006), the failure to dispute a debt within thirty days "merely allows the debt collector to proceed under . . . a 'temporary fiction' that the debt stated in the validation notice is true."  See also Smith v. Hecker, No. Civ. A. 04-5820, 2005 WL 894812, at *4 (E.D. Pa. Apr. 18, 2005).  Section 1692g(a)(3), therefore, permits a debt collector to assume the debt correct and undertake collection efforts that would otherwise be suspended, at least temporarily, if the debt was disputed.  See 15 U.S.C. § 1692g(b).  But a consumer's failure to dispute a debt, in and of itself, does not license a debt collector to pursue legal action against the consumer.  Indeed, the FDCPA negates any such suggestion.  See 15 U.S.C. § 1692i(b) ("Nothing in [the FDCPA] shall be construed to authorize the bringing of legal actions by debt collectors.").  Indeed, a consumer's failure to dispute the validity of a debt will not bar her from defending against a subsequent debt collection lawsuit.  See 15 U.S.C. § 1692g(c) ("The failure of a consumer to

14

dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer."). Because Congress has mitigated the prejudice to a consumer in a debt collection action arising from her failure to dispute the debt under § 1692g(a), it is consistent with congressional intent to hold that her failure to dispute the debt's validity does not preclude an FDCPA action based on subsequent debt collection practices declared unlawful under the FDCPA.

Moreover, when the debt collector proceeds under the "temporary fiction" that the debt is valid, the debt collector must still refrain from utilizing abusive debt collection practices. See 15 U.S.C. § 1692k(a) ("[A]ny debt collector who fails to comply with any provision of [the FDCPA] with respect to any person is liable to such person." (emphasis added)). If the debt collector employs false, deceptive, or misleading representations or unfair or unconscionable means in the course of collecting or attempting to collect a debt, the fact that the debt collector provided the consumer written notice complying with § 1692g(a) and/or the consumer never disputed the debt has no bearing on the debt collector's liability under the FDCPA. See Williams v. Edelman, 408 F. Supp. 2d 1261, 1270 (S.D. Fla. 2005) ("Defendants fail to point to any statutory language or case law that suggests that knowing misrepresentations . . . are not actionable so long as the debt collector's initial letter otherwise meets the FDCPA notice requirements."); Burdett v. Harrah's Kan. Casino Corp., 294 F. Supp. 2d 1215, 1226-27 (D. Kan. 2003) (in action alleging multiple violations of the FDCPA, defendant not entitled to

summary judgment "just because the [consumers] did not dispute the validity or request verification of the debts").  A contrary result would subvert the FDCPA's salutary purpose of eliminating abusive debt collection practices.  In this regard, Ms. Gigli's argument opposing Defendants' motion is compelling.  (See Pl.'s Br. Contra. Defs.' Mot. Summ. J. ("Pl.'s Br."), Dkt. Entry 29, at 10.)  Accepting Defendants' contention would encourage debt collectors to arbitrarily send a written notice to any person falsely claiming that person owed a debt. Provided the consumer fails to take action within thirty days, the debt collector may then institute a debt collection action repeating the same false representations without fear of FDCPA liability.  Immunizing unscrupulous debt collectors, while depriving consumers of a remedy, would frustrate the FDCPA.  Consequently, Defendants' summary judgment motion on this basis will be denied.[7]

_____

[7]The cases cited by Defendants are not to the contrary.  For example, in Richmond v. Higgins, 435 F.3d 825, 827 (8th Cir. 2006), a debt collector sent an FDCPA-compliant notice to the consumer's attorney, who failed to respond within thirty days.  A few months later the attorney notified the debt collector and alleged, for the first time, that the debt collector misstated the debt amount because federal Medicaid law limited the amount a healthcare provider could collect from a Medicaid-eligible patient.  Id.  The consumer eventually filed an action under the FDCPA, ostensibly to redress an alleged FDCPA violation.  Recognizing that the action was simply a proxy to litigate the scope of 42 U.S.C. § 1396a(a)(25)(C)-(D), the relevant Medicaid provision, see id. at 829; see also id. at 827 (quoting letter from attorney to debt collector advising debt collector that there was no other "'way to enforce [§ 1396a(a)(25)(C)-(D)] against medical providers other than through the [FDCPA]'"), the Eighth Circuit found no violation of the FDCPA.  An FDCPA action is not the appropriate vehicle to dispute the merits of a debt, especially where the consumer's attorney never disputed the debt within the thirty-day period.  Indeed, there was nothing in the record to suggest the grounds for the dispute did not exist prior to the attorney's first contact with the debt collector regarding the

Defendants' other contention in favor of summary judgment is that filing a lawsuit to collect a debt without immediate proof does not violate the FDCPA.  In this regard, they read Ms. Gigli's FDCPA claims as predicated on Defendants filing a lawsuit without possessing substantiating documentation and then failing to provide such documentation in response to the request by Ms. Gigli's attorney.  (See Defs.' Mem. 6.)  To support this contention, Defendants

---

dispute.  As such, the debt collector was allowed to assume the debt valid, and his attempts to collect the previously undisputed debt were not actionable under the FDCPA.  Id. at 829.  Here, Ms. Gigli is not seeking to litigate the merits of the debt allegedly owed to Palisades, nor is she challenging Defendants' right to undertake debt collection activities following her failure to dispute the debt.  Instead, she alleges that Defendants in the state court lawsuit used false representations and unfair and unconscionable means in attempting to collect a debt.  Cf. id. ("[Plaintiff] has never alleged that he was billed for services that were not provided or that he was overcharged for the services he received.").

In Bleich v. Revenue Maximization Group, Inc., 233 F. Supp. 2d 496, 497-498 (E.D.N.Y. 2002), a debt collector sent a consumer a collection letter, conforming to § 1692g(a), that sought payment of a twenty-five dollar debt.  The consumer disputed the debt, but rather than avail herself of the debt validation procedure, she filed a lawsuit under the FDCPA.  Id. at 498.  Dismissing the complaint, the court held that where a consumer alleges a debt referenced in a collection letter is invalid, the consumer must exhaust the debt validation procedure and may not bypass that procedure by commencing litigation immediately after receipt of the letter.  Id. at 501; see also Lindbergh v. Transworld Sys., Inc., 846 F. Supp. 175, 179 (D. Conn. 1994) (consumer may not supplant FDCPA validation procedure with litigation).  In this matter, Ms. Gigli's claim is not predicated on the alleged invalidity of the debt stated in the November 23 letter, nor was her lawsuit prompted by that letter.  On the contrary, Ms. Gigli filed suit after being served with a state court complaint that allegedly contained false representations and sought to collect unauthorized debt.  The state court complaint, not the November 23 letter, is the gravamen of her FDCPA claims.  And unlike Lindbergh, see 846 F. Supp. at 179, there is evidence sufficient to raise a genuine issue of material fact concerning whether Defendants falsely represented the character, amount, or legal status of a debt and used unfair or unconscionable means in attempting to collect the debt.

rely on the Sixth Circuit's decision in Harvey v. Great Seneca Financial Corporation, 453 F.3d 324 (6th Cir. 2006).

In Harvey, defendants, a debt collector and its law firm, filed a state court complaint against plaintiff to collect two delinquent accounts. Id. at 326. After being served with the complaint, plaintiff filed an answer and sought discovery from defendants regarding the ownership, origination, and amount of the debts. Id. Defendants refused to produce documents responsive to her requests, which prompted plaintiff to file a motion to compel. Id. Rather than contest the motion, defendants dismissed the complaint. Plaintiff then brought an action in federal court alleging defendants violated the FDCPA by "filing . . . a state-court collection action knowing that it 'had no documentation' to prove the debt." Id. Among other provisions, plaintiff claimed the lawsuit violated 15 U.S.C. § 1692e(10), which prohibits the "'use of any false representation or deceptive means to collect or attempt to collect any debt.'" Id. at 329 (quoting 15 U.S.C. § 1692e(10)). The district court granted defendants' motion to dismiss.

On appeal, the Sixth Circuit first determined that plaintiff "alleged only that, at the time of filing, [defendants] did not have the means of proving their debt-collection claim." Id. at 328. Based on this understanding of plaintiff's complaint, the court held that defendants' alleged conduct did not violate the FDCPA. The court reasoned that plaintiff never denied that she owed the debt or alleged that defendants in the underlying state court action falsely represented the existence or amount of the debt. Id. at 332. As such, the mere filing of a

lawsuit without immediate means of proof was not a misrepresentation or deceptive under §

1692e(10).  Id.; see also Deere v. Javitch, Block & Rathbone, LLP, 413 F. Supp. 2d 886, 891

(S.D. Ohio 2006) ("[Plaintiff] essentially alleges that more of a paper trail should have been in

the lawyers' hands or attached to the complaint.  The FDCPA imposes no such obligation.").

        Contending this case is identical to Harvey, Defendants urge the Court follow to Harvey

and grant their summary judgment motion.  Harvey, however, is distinguishable.  In Harvey,

plaintiff alleged that the act of filing a lawsuit without immediate proof constituted a false or

deceptive debt collection practice under § 1692e(10).  Finding plaintiff's allegations insufficient,

the court stressed that plaintiff never alleged the state court complaint contained any false

representations.  See also Deere, 413 F. Supp. 2d at 890-91; Davis v. NCO Portfolio Mgmt.,

Inc., No. 1:05 CV 734, 2006 WL 290491, at *2 (S.D. Ohio Feb. 7, 2006).  But in this case, and

contrary to Defendants' assertions, Ms. Gigli's FDCPA claims are not based on Defendants'

filing of a debt collection action, refusing to provide upon request substantiating documentation,

and then dismissing the action.  Rather, she has averred that the complaint filed in the

underlying action falsely represented the character, amount, or status of a debt and sought to

collect amounts not authorized by an agreement.  In this regard, her FDCPA claims are

analogous to the consumer's in Delawder v. Platinum Financial Services Corp., 443 F. Supp.

2d 942 (S.D. Ohio 2005).  There, the district court denied defendants' motion to dismiss where

plaintiff alleged that an affidavit attached to the debt collector's complaint misrepresented the

19

amount of, and the debt collector's claim to, the debt.  Id. at 947.  Accordingly, Harvey provides

no basis for granting Defendants' motion.

Moreover, Ms. Gigli has gone beyond her allegations to establish a genuine issue of

material fact with respect to her FDCPA claims.  Regarding her claim that Defendants sought to

collect an amount for interest not authorized by an agreement, Ms. Gigli notes that despite her

discovery requests, Defendants have yet to produce a credit card agreement evidencing her

assent to pay any amount of interest.  (Pl.'s Br. 8.)[8]  Additionally, she points to Mr. Cherkis's

deposition testimony.  Mr. Cherkis prepared the debt collection complaint in which he alleged

that Palisades's assignor issued a credit card to Ms. Gigli "subject to terms an [sic] conditions

as outlined and agreed upon by [Ms. Gigli], which included . . . interest" at the rate of eighteen

percent.  (Ex. 3-A to Cherkis Dep.)  Before drafting the complaint, however, he never reviewed

a credit card agreement for the allegation that Ms. Gigli agreed to pay 18% interest – indeed,

---

[8]In the Request for Admissions, Defendant were asked to admit that, at the time the
debt collection action was commenced, none had possession of any documents that
established Ms. Gigli's agreement to pay an interest rate of eighteen percent.  (Defs.' Resp. to
Request for Admissions ¶ 9.)  Defendants denied the request and purportedly attached to their
answer the "First USA credit card agreement."  (Id.)  Ms. Gigli included Defendants' answers in
her papers opposing summary judgment, but the "First USA credit card agreement" was not
filed.  Because Defendants have not accused Ms. Gigli of deliberately omitting the agreement,
and have not submitted the agreement themselves, it is unclear whether Defendants actually
attached the agreement to their answers and, if so, whether the agreement is generic
(unsigned) or particular to Ms. Gigli (and signed).  In any event, their answer to Request for
Admission number 9 conflicts with their answer to Request for Admission number 6, in which
they admitted not having possession of a revolving credit card account agreement signed by
Ms. Gigli at the time the state court complaint was filed.  (Id. ¶ 6.)

none of Defendants possessed such agreement – and relied on "client information" for the general allegation that Ms. Gigli agreed to certain terms and conditions.  But since Defendants refuse to elaborate on the client information, a jury could only conjecture what terms and conditions, if any, were actually agreed to by Ms. Gigli.  Additionally, Mr. Cherkis testified inconsistently about how the eighteen percent interest rate was derived.  When questioned about the rate appearing on the Collection Activity Report, Mr. Cherkis stated that it was generated from "client information."  Yet later in his deposition, and contrary to his representation in the complaint that the allegations were based on information supplied by Palisades, Mr. Cherkis testified that the eighteen percent interest rate claimed in the state court complaint was determined by another attorney in his office.  The basis for that attorney's determination is unknown.  Viewing this evidence in the light most favorable to Ms. Gigli, there is a genuine issue of material fact whether the interest rate charged in the complaint was authorized by an agreement or was simply Defendants' ipse dixit.  Indeed, a reasonable jury could determine that no such agreement ever existed, and therefore, that Defendants attempted to collect an unauthorized amount.

To show Ms. Gigli's credit card account was subject to an eighteen-percent interest rate, Defendants attached to their reply papers the supplemental affidavit of Mr. Berman.  (See Dkt. Entry 31-2.)  Mr. Berman stated that Ms. Gigli's "credit card account is governed by the credit agreement issued by First USA" and that, "[b]ased on my review of [Ms. Gigli's] credit card

account records, the interest rate applicable to [her] credit card account was 18%." (Id. ¶¶ 7-8.)

Neither the account agreement nor the account records are attached to Mr. Berman's affidavit.

Even assuming this affidavit complies with the Federal Rules of Civil Procedure, see Fed. R.

Civ. P. 56(e)(1) ("If a paper or part of a paper is referred to in an affidavit, a sworn or certified

copy must be attached to or served with the affidavit."), it is plainly inadequate to warrant

summary judgment.  An affidavit memorializing Mr. Berman's review of "credit card account

records," which may or may not comprise the credit card agreement, does not establish that the

eighteen-percent interest rate was "expressly authorized by the agreement creating the debt."

At best, Mr. Berman's supplemental affidavit confirms that there are questions of fact

surrounding whether an agreement authorized the collection of interest, since Ms. Gigli has

pointed to evidence from which a jury might determine there was no contractual authorization.

Moreover, a reasonable jury could question why Defendants failed to produce the actual credit

card agreement and account records and could infer from their non-production that no such

documents ever existed.  Accordingly, Defendants' motion for summary judgment will be

denied.

        Ms. Gigli has also shown a triable issue as to whether Defendants in the state court

complaint falsely represented Palisades's legal standing to collect the debt.  See Gearing v.

Check Brokerage Corp., 233 F.3d 469, 472 (7th Cir. 2000) (debt collector's misrepresentation

regarding its standing to collect a debt violated 15 U.S.C. § 1692e(2)(A)).  In the state court

complaint, Defendants alleged that Palisades was the assignee of Bank One, who purportedly issued a credit card to Ms. Gigli.  That account was allegedly transferred from First USA (renamed Bank One) to Sherman Financial and then to Sherman Acquisition, who in turn transferred Ms. Gigli's account to Palisades.  As Ms. Gigli observes, there is no evidence corroborating any of these transactions.  The purchase or transfer agreements between FirstUSA/Bank One and Sherman Financial and between the Sherman entities are not part of the record.  And although there is the Bill of Sale and Assignment between Sherman Acquisition and Palisades, in which the former assigned to the latter "all [its] rights, title and interest . . . in and to those certain Charged-off Accounts described in Exhibit '1,'" Exhibit 1, an examination of which would presumably reveal whether Ms. Gigli's alleged First USA/Bank One account was among the accounts assigned to Palisades, is conspicuously absent from the record.

A similar situation confronted the district court in Munoz v. Pipestone Fin., LLC, Civ. No. 04-4142 (JNE/SRN), 2006 WL 2786911 (D. Minn. Sept. 26, 2006).  In Munoz, defendants attempted to collect interest and attorney fees in connection with a credit card account acquired by assignment from Unifund CCR Partners.  Id. at *1.  The district court denied defendants' first motion for summary judgment, reasoning that defendants failed to demonstrate that Unifund – the assignee of the original creditor, Bank One – had received the right to collect interest and attorney fees.  Id. at *2.  Renewing their motion for summary judgment, defendants submitted

the Bank One-Unifund Purchase Agreement that provided for the assignment to Unifund of Bank One's rights and interest in "'the Charged-off Accounts identified in the file.'" Id. Defendants did not produce, however, the file of Charged-off Accounts referenced in the purchase agreement. Id. at *2, 3. The court denied defendants' second motion. The evidence offered by defendants was insufficient to show that plaintiff's account was among the accounts assigned to Unifund under the purchase agreement, and a reasonable jury could conclude the account was not assigned pursuant to that agreement. Id. at *4.

An identical outcome is compelled here. Just as the jury in Munoz could determine that plaintiff's account was not assigned under the purchase agreement, a reasonable jury in this matter could conclude that Ms. Gigli's account was not assigned to Palisades pursuant to the Bill of Sale and Assignment.

Defendants offer to fill this evidentiary abyss with the supplemental affidavit of Mr. Berman and the affidavit of Brett Hildebrand, a representative of Sherman Acquisition. These affidavits, however, are insufficient to demonstrate that Ms. Gigli's account was acquired by Sherman Acquisition or assigned to Palisades. See id. at *2, 4. Mr. Hildebrand stated that Sherman Acquisition, through Sherman Financial, purchased credit card accounts from First USA. Sherman Acquisition sold those accounts to Palisades. Mr. Hildebrand, however, did not identify Ms. Gigli's account among the "accounts" acquired from First USA and transferred to Palisades. As for Mr. Berman, he simply declared that Palisades acquired by assignment Ms.

24

Gigli's First USA credit card account from Sherman Acquisition and, citing Mr. Hildebrand's affidavit, that Sherman Acquisition purchased that account from First USA.  Neither affidavit is accompanied by documents evidencing any of these transactions.

Viewing this evidence in the light most favorable to Ms. Gigli, a reasonable jury could conclude that Palisades never acquired, through assignment or otherwise, Ms. Gigli's First USA credit card account.  If Palisades never acquired Ms. Gigli's account, the allegation in the state court lawsuit that it was the assignee of the account misrepresented the legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A).  Therefore, Defendants' motion for summary judgment will be denied.[9]

C. FCEUA Claims

The FCEUA is Pennsylvania's analogue to the FDCPA and applies to both debt collectors and creditors.  See 73 Pa. Stat. Ann. § 2270.4; cf. Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 403 (3d Cir. 2000) ("Creditors – as opposed to 'debt collectors' – generally are

---

[9]In her opposition brief, Ms. Gigli alleged that the statute of limitations had run on her purported debt, and that Defendants' filing suit to collect a time-barred debt violated both § 1692e(2)(A) and § 1692f(1).  (Pl.'s Br. 8 (citing Kimber v. Fed. Fin. Corp., 668 F. Supp. 1480 (M.D. Ala. 1987)).)  Unlike her contentions that Defendants sought to collect an unauthorized debt and falsely represented Palisades's standing, Ms. Gigli did not allege in her complaint that Defendants violated the FDCPA by attempting to collect a time-barred debt.  In essence, Ms. Gigli is asserting a new and distinct theory of liability without seeking leave to amend her complaint.  A plaintiff may not, however, present a claim for the first time in opposition to a summary judgment motion.  See Martsolf v. JBC Legal Group, P.C., Civ. A. No. 1:04-CV-1346, 2008 WL 275719, at *2 n.5 (M.D. Pa. Jan. 30, 2008).  Consequently, the Court declines to consider this argument in ruling on Defendants' motion.

not subject to the FDCPA."). A debt collector's violation of any provision of the FDCPA constitutes a violation of the FCEUA. 73 Pa. Stat. Ann. § 2270.4(a). A creditor also is liable under the FCEUA if it engages in any conduct declared unlawful by § 2270.4(b), which mirrors the FDCPA's proscriptions. Compare id. § 2270.4(b), with 15 U.S.C. §§ 1692b-1692f. For example, the FCEUA prohibits the use by creditors of "false, deceptive or misleading representation[s] or means" to collect a debt, including a "false representation of the character, amount or legal status of any debt," 73 Pa. Stat. Ann. § 2270.4(b)(5)(ii), and the use of "unfair or unconscionable means to collect or attempt to collect any debt," such as the "collection of any amount, including any interest . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Id. § 2270.4(b)(6)(i). In this matter, Ms. Gigli has brought FCEUA claims against W&A and Palisades. Each Defendant will be addressed separately.

W&A moves for summary judgment on the basis of the FCEUA's "attorney exception." The FCEUA includes within the definition of "debt collector" an attorney whenever the attorney attempts to collect a debt, "except in connection with the filing or service of pleadings or discovery or the prosecution of a lawsuit to reduce a debt to judgment." Id. § 2270.3(3)(ii). Whether the attorney exception applies depends on the basis of the plaintiff's claim. See Richburg v. Palisades Collection LLC, 247 F.R.D. 457, 466 (E.D. Pa. 2008). Here, W&A contends, and Ms. Gigli does not deny, that Ms. Gigli's claim against it is premised on the

lawsuit filed in the state court debt collection action.  Specifically, Ms. Gigli seeks to hold W&A

liable for the filing of a complaint that contained false representations.  Because the debt

collection activity was undertaken "in connection with the filing . . . of pleadings [and]

prosecution of a lawsuit to reduce a debt to judgment," W&A is not a debt collector under  the

FCEUA and cannot be held liable.  See Silva v. Mid Atl. Mgmt. Corp., 277 F. Supp. 2d 460, 466

(E.D. Pa. 2003) (law firm not debt collector under the FCEUA where its involvement was limited

to prosecuting a lawsuit in court).  Therefore, W&A's motion for summary judgment on this

claim will be granted.

      Ms. Gigli also asserts FCEUA claims against Palisades, alternatively contending it is

liable as either a "debt collector" or "creditor."  For purposes of its summary judgment motion,

Palisades does not challenge its designation as a "debt collector" or "creditor."[10]  Rather,

Palisades contends that Ms. Gigli's FCEUA claim against it is based on vicarious liability for the

acts of its agent, W&A.  Because the attorney exception applies to W&A, Palisades argues that

its potential liability under the FCEUA is terminated along with the claim against W&A.  (Defs.'

Mem. 9 (citing Mamalis v. Atlas Van Lines, Inc., 560 A.2d 1380, 1383 (Pa. 1989)).)  This

contention, however, rests on a misconstruction of Ms. Gigli's claim, for it is obvious she is

---

[10]Because the Court has determined that there are genuine issues of material fact concerning Ms. Gigli's FDCPA claims, and the FDCPA and FCEUA claims are based on the same conduct, Palisades's contention that "no derivative liability under the FCEUA can attach" because "no violation of the FDCPA occurred" is without merit.  (Defs.' Resp. Pl.'s Opp'n Mot. Summ. J. ("Defs.' Resp."), Dkt. Entry 31, at 6.)

asserting FCEUA claims against Palisades directly.  Moreover, the evidence is such that a reasonable jury could find Palisades directly liable.  Palisades furnished "client information" to W&A for debt collection purposes, information that a jury could reasonably determine to be false, and authorized the filing of the debt collection action it is own name.  Rejecting a similar argument in Richburg, Judge Dalzell observed that "[i]t is Palisades's name in the caption on the [complaint], and it is Palisades that would recover if successful."  Richburg, 247 F.R.D. at 466.  Consequently, Palisades's motion for summary judgment will be denied.

### D. Dragonetti Act Claims

Ms. Gigli asserts that Defendants violated the Dragonetti Act by commencing the state court debt collection action.  Specifically, she avers that the lawsuit was filed without probable cause because Defendants had no evidence that Ms. Gigli actually owed the debt claimed in the complaint or that Palisades had standing to collect the debt.  She further alleges that the lawsuit was filed for an improper purpose.

Pennsylvania provides a statutory cause of action to redress the wrongful use of civil proceedings.  See 42 Pa. Cons. Stat. Ann. §§ 8351-8355.  Known as the "Dragonetti Act," the statutory scheme codified the common law torts of malicious prosecution and abuse of process. See U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 394 (3d Cir. 2002).  The Dragonetti Act imposes liability on any person who procures, initiates, or continues civil proceedings against another if

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
(2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa. Cons. Stat. Ann. § 8351(a).  To prevail on a Dragonetti Act claim, a plaintiff must prove five elements, only two of which are it issue here: (1) absence of probable cause; and (2) action brought for an improper purpose.  Id. § 8354(3)-(4).[11]

In moving for summary judgment, W&A and Mr. Cherkis initially contend that Ms. Gigli's Dragonetti Act claims against them fail as a matter of law because she cannot prove they filed the state court complaint for an improper purpose.[12]  They contend that an attorney is not liable, even if he initiates a civil proceeding on behalf of his client without probable cause, "'if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim.'"  (Defs.' Mem. 10 (quoting Broadwater v. Sentner, 725 A.2d 779, 784 (Pa. Super. Ct. 1999))).  In this regard, W&A and Mr. Cherkis observe that Pennsylvania follows Restatement (Second) of Torts § 674 cmt. d (1977) with regard to attorney liability in Dragonetti Act claims.  (Defs.' Resp. 7.)  See Bannar v. Miller, 701 A.2d 242, 248 (Pa. Super. Ct. 1997) (quoting Meiksin v. Howard

---

[11]The other three elements plaintiff must prove are that (1) "[t]he defendant has procured, initiated or continued the civil proceedings against him"; (2) "[t]he proceedings were terminated in his favor"; and (3) "[t]he plaintiff has suffered damages as set forth in [42 Pa. Cons. Stat. Ann. § 8353]."  42 Pa. Cons. Stat. Ann. § 8354(1)-(2), (5).

[12]Although Ms. Gigli asserted Dragonetti Act claims against all three Defendants, only W&A and Mr. Cherkis have presented arguments in support of summary judgment.

29

Hanna Co., 590 A.2d 1303, 1305 (Pa. Super. Ct. 1991)).  Comment d, in part, provides:

> An attorney who initiates a civil proceeding on behalf of his client . . . is not liable if he has probable cause for his action; and even if he has no probable cause and is convinced that his client's claim is unfounded, he is still not liable if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim.  An attorney is not required or expected to prejudge his client's claim, and although he is fully aware that its chances of success are comparatively slight, it is his responsibility to present it to the court for adjudication <u>if his client so insists after he has explained to the client the nature of the chances</u>.

Restatement (Second) of Torts § 674 cmt. d (citations omitted) (emphasis added).  "Based on this reasoning, the attorney may bring claims without probable cause in order to obtain the proper adjudication of the client's claims <u>upon his client's insistence after disclosing to the client the likelihood of the claim's success</u>."  Bannar, 701 A.2d at 248 (emphasis added).

  The comment d safe harbor collapses into three prongs: (1) the attorney must disclose to the client the probability of the claim's success; (2) the client must insist that the claim be pursued; and (3) the attorney must initiate the proceeding to obtain the proper adjudication of the client's claim.  Here, W&A and Mr. Cherkis proffer the latter's affidavit where he stated that he signed the state court complaint with the intent "to pursue [Palisades's] claim to seek a proper adjudication of Ms. Gigli's debt."  (Cherkis Aff., Dkt. Entry 27-8, ¶ 4.)  Additionally, Mr. Cherkis declared that he "did not knowingly file the suit against Ms. Gigli as a groundless action nor to accomplish a malicious purpose."  (Id. ¶ 5.)  This affidavit, W&A and Mr. Cherkis contend, "is sufficient to negate any liability under the Dragonetti Act."  (Defs.' Mem. 10.)

While Defendants devote their attention to prong three of the attorney safe harbor, they ignore prongs one and two.  In this regard, there is no evidence that W&A or Mr. Cherkis disclosed to Palisades the probability of succeeding against Ms. Gigli on its debt collection claim or that, following disclosure, Palisades insisted that the claim be pursued.  Consequently, if probable cause is lacking, W&A and Mr. Cherkis may not rely on the comment d safe harbor.

Moreover, Mr. Cherkis's affidavit does not establish proper purpose definitively. Defendants' contention assumes that direct evidence of improper purpose is essential.  But as the superior court observed in Gentzler v. Atlee, 660 A.2d 1378, 1385 (Pa. Super. Ct. 1995), "the plaintiff in a wrongful use of civil proceedings action need not obtain the defendant's outright 'confession' of improper purpose; an improper purpose may be inferred where the action is filed without justification."  See also Buchleitner v. Perer, 794 A.2d 366, 377 (Pa. Super. Ct. 2002) ("Pennsylvania law also states that improper purpose may be inferred from want of probable cause to maintain or continue the proceedings.").  In this matter, Ms. Gigli contends that there is evidence that Defendants had no probable cause to file suit against her. (Pl.'s Br. 12.)  If the jury agrees that probable case was lacking, she notes, the jury could reasonably conclude Defendants commenced the debt collection action for an improper purpose.  (See Id. at 11.)  Therefore, the Court must determine whether the evidence is sufficient to permit the jury to find the absence of probable cause.

Under the Dragonetti Act, a person initiating a civil proceeding has probable cause to do

so if "he reasonably believes in the existence of the facts upon which the claim is based" <u>and</u> either (1) "[r]easonably believes that under those facts the claim may be valid under the existing or developing law"; or (2) "[b]elieves as an attorney of record, in good faith that his . . . initiation . . . of a civil cause is not intended to merely harass or maliciously injure the opposite party." 42 Pa. Cons. Stat. Ann. § 8352(1), (3).[13]  A showing of probable cause to bring a lawsuit is a complete defense to a Dragonetti Act claim.  <u>Broadwater</u>, 725 A.2d at 782.  "'Usually, the existence of probable cause is a question of law for the court rather than a jury question, but may be submitted to the jury when facts material to the issue of probable cause are in controversy.'" <u>McKibben v. Schmotzer</u>, 700 A.2d 484, 492-93 (Pa. Super. Ct. 1997) (<u>quoting Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Local Union 249</u>, 544 A.2d 940, 941 (Pa. 1988)).

Whether probable cause existed at the time the debt collection action was filed is informed by the underlying substantive law.  <u>See</u> <u>Broadwater</u>, 725 A.2d at 783.  The failure to repay credit extended pursuant to an agreement constitutes a breach of contract.  To succeed in an action for breach of contract, a plaintiff must prove "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." <u>Omicron Sys., Inc. v. Weiner</u>, 860 A.2d 554, 564 (Pa. Super. Ct. 2004) (quotation

---

[13]A third component of the probable cause definition, omitted here, pertains to the non-attorney, party-plaintiff in the underlying civil proceeding.  <u>See</u> 42 Pa. Cons. Stat. Ann. § 8352(2).

omitted) (emphasis added).  "'The burden is on the plaintiff to prove by a preponderance of the evidence the existence of the contract to which the defendant is a party.'"  Johnston the Florist, Inc. v. TEDCO Constr. Corp., 657 A.2d 511, 516 (Pa. Super. Ct. 1995) (quoting Viso v. Werner, 369 A.2d 1185, 1187 (Pa. 1977)).  Moreover, in order to assert the rights of an assignor under a contract, there must be a valid assignment.  See Smith v. Cumberland Group, Ltd., 687 A.2d 1167, 1172 (Pa. Super. Ct. 1997).

Here, Mr. Cherkis filed the state court complaint alleging, among other things, (1) that Palisades's assignor issued Ms. Gigli a credit card pursuant to an agreement; (2) that Ms. Gigli agreed to certain terms and conditions under the agreement, including the payment of interest at eighteen percent; (3) that Ms. Gigli utilized the credit card to purchase goods and services; (4) that the unpaid balance due and owing was $4,705.14; and (5) that Palisades acquired the delinquent account by assignment and was legally entitled to collect the unpaid amount.  Prior to filing suit, however, Mr. Cherkis admitted that he never reviewed a credit card account agreement; never reviewed any periodic account statements or credit card receipts; and never reviewed documents that evidenced Palisades's acquisition of Ms. Gigli's account.  Additionally, all Defendants, or at least W&A, admitted that, at the time the state court action was filed, they did not possess a credit card account agreement signed by Ms. Gigli or any documents showing the computation of the unpaid balance or indicating actual use of the credit card by Ms. Gigli.

Viewing this evidence in the light most favorable to Ms. Gigli, the Court is unable to conclude as a matter of law – as it must to enter summary judgment – that probable cause existed to initiate the state court action.  As Ms. Gigli observes, the state court action was based on an alleged contract, and proof of its existence and essential terms was necessary to prevail in a breach of contract action.  Yet Mr. Cherkis, a licensed Pennsylvania attorney, never reviewed an actual credit card account agreement or other documents, such as account statements or charge receipts, that might circumstantially prove the existence of the contract or its terms.  Indeed, none of the Defendants possessed a credit card agreement signed by Ms. Gigli.  The state court complaint also alleged Ms. Gigli's personal use of the credit card, the amount of the unpaid balance, and Palisades's status as assignee of the account.  Yet, at the time of filing, Mr. Cherkis neither reviewed nor did W&A possess any evidence supporting these allegations, and without proof of a valid assignment, Palisades had no basis to enforce the alleged credit card agreement and recover the unpaid amount.  Given the paucity of available evidence – along with Defendants' precipitous dismissal of the action in response to a request for documents from Ms. Gigli's attorney – a jury could conclude that Mr. Cherkis brought the debt collection action without a reasonable belief in the claim's factual basis or legal viability.  And because a jury could determine that the state court action was initiated without probable cause, it could reasonably infer the action was commenced for an improper purpose and disbelieve Mr. Cherkis's statement that he filed the complaint to pursue a proper adjudication of

Palisades's claim.

W&A and Mr. Cherkis contend that the state court complaint was filed based on information furnished by their client, Palisades, and that they were justified in relying on that information.  (Defs.' Resp. 6, 7-8.)  Pennsylvania courts have recognized that "an attorney is entitled to rely in good faith upon the statement of facts made to him by his client, and is not under a duty to institute an inquiry for the purpose of verifying his statement before giving advice thereon."  Meiksin, 590 A.2d at 1306 (quotation omitted); see also Kit v. Mitchell, 771 A.2d 814, 822-23 (Pa. Super. Ct. 2001).  "If the client falsifies the facts, there may be a liability which attaches to the client, but the lawyer is not liable if, without more, he acts in good faith upon the facts stated by the client."  Meiksin, 590 A.2d at 1306 (emphasis added).  To determine whether reliance was in good faith, the contents of the client's statement of facts must be assessed.  Here, the record contains only vague allusions as to what comprised the "client information" transmitted by Palisades to W&A.  Because the record does not contain the actual information supplied by Palisades, the Court cannot determine whether W&A and Mr. Cherkis relied in good faith on that information.

Finally, W&A and Mr. Cherkis argue that Ms. Gigli's failure to exercise her right under the FDCPA to dispute the debt within thirty days of receipt of the November 23 letter allowed them to assume the debt valid and justified their subsequent filing of the state court complaint.  In other words, Ms. Gigli's inaction "confer[red] a good faith, probable cause basis to proceed to

suit, <u>as a matter of law</u>, even absent Cherkis' affirmation." (Defs.' Mem. 10 (emphasis added).)
This argument is without merit.  As explained earlier, § 1692g(c) provides that the "failure of a
consumer to dispute the validity of a debt under this section may not be construed by any court
as an admission of liability by the consumer."  Thus, even if the consumer fails to dispute the
validity of the debt, the debt collector must still demonstrate its entitlement to relief in a
subsequent debt collection action.  A consumer's failure to dispute the debt has no bearing on
whether probable cause exists to initiate a debt collection action.  <u>See also</u> 15 U.S.C. §
1692i(b) ("Nothing in [the FDCPA] shall be construed to authorize the bringing of legal actions
by debt collectors.").

     In summary, Ms. Gigli has presented evidence from which a jury may reasonably
conclude that the state court action was initiated without probable cause and for an improper
purpose.  Consequently, Defendants' motion for summary judgment will be denied.

     E. <u>Negligence Claim</u>

     Finally, Ms. Gigli alleges that W&A is liable for negligently supervising Mr. Cherkis in
connection with his filing of the state court debt collection action.  Specifically, she contends
that W&A breached a duty to her by failing to properly train Mr. Cherkis in federal and state
debt collection law and failing to adopt internal policies to ensure that no lawsuits were filed
unless documents necessary to prove the claims were available to the attorney.  (Pl.'s Br. 13.)

     Employers in Pennsylvania may be liable directly for harm caused by their employees

where the employer itself has been negligent.  See, e.g., Heller v. Patwil Homes, Inc., 713 A.2d 105, 107 (Pa. Super. Ct. 1998).  As relevant here, Pennsylvania has adopted section 213 of the Restatement (Second) of Agency, which addresses direct liability of employers.  Id.[14]  Section 213, however, does "no more than . . . restate the existing tort law of Pennsylvania."  R.A. ex rel. N.A. v. First Church of Christ, 748 A.2d 692, 697 (Pa. Super. Ct. 2000).  Liability under section 213 "'exists only if all the requirements of an action of tort for negligence exist.'"  Brezenski v. World Truck Transfer, Inc., 755 A.2d 36, 42 (Pa. Super. Ct. 2000) (quoting Restatement (Second) of Agency § 213 cmt. a (1958)).

Four elements must be proven to prevail in a cause of action based on negligence: duty, breach of duty, causal relationship between the breach and plaintiff's injury, and actual damages.  See, e.g., Minnich v. Yost, 817 A.2d 538, 541 (Pa. Super. Ct. 2003).  The sine qua non of a negligence action is a duty of care owed by defendant to plaintiff.  Althaus ex rel.

---

[14]Section 213 of the Restatement (Second) of Agency provides:

A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
> (a) in giving improper or ambiguous orders of [sic] in failing to make proper regulations; or
> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others:
> (c) in the supervision of the activity; or
> (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Althaus v. Cohen, 756 A.2d 1166, 1168 (Pa. 2000). "It is a fundamental rule of tort law that a negligence claim must fail if it is based on circumstances for which the law imposes no duty of care on the defendant." Gerace v. Holmes Protection of Phila., 516 A.2d 354, 358 (Pa. Super. Ct. 1986) (citing Morena v. S. Hills Health Sys., 462 A.2d 680, 684 (Pa. 1983)). And while section 213 "impose[s] on an employer the duty to exercise reasonable care in selecting, supervising and controlling employees," R.A., 748 A.2d at 697, it does not create a duty in favor of a particular party where one does not otherwise exist. Cf. Morena, 462 A.2d at 684. "Duty, in any given situation, is predicated on the relationship existing between the parties at the relevant time . . . ." Id.

Ms. Gigli contends that W&A owed her a duty of care to properly supervise Mr. Cherkis in connection with the filing of debt collection lawsuits. Whether Pennsylvania imposes on law firms a duty under the circumstances presented here is an unanswered question. Cf. Motheral v. Burkhart, 583 A.2d 1180, 1190 (Pa. Super. Ct. 1990) ("Assuming for the sake of argument that appellant has alleged sufficient facts to show that the law firm owed a duty to him and breached that duty, we have already determined that [the attorney did not commit malicious prosecution, and] [t]herefore, . . . there is no causal relationship between the firm's allegedly negligent supervision and the harm suffered by appellant . . . ."). Ms. Gigli has cited no cases from Pennsylvania or any other jurisdiction recognizing such a duty. For its part, W&A argues that it owed no duty of care to Ms. Gigli, citing as support Smith v. Griffiths, 476 A.2d 22 (Pa.

Super. Ct. 1984).  (Defs.' Mem. 10-11.)

In Smith, a husband sued his ex-wife's attorney alleging the attorney rendered "'illegal, improper and reckless' advice" to the ex-wife during the couple's divorce proceeding. Id. at 26. The trial court dismissed his complaint.  On appeal, the Superior Court affirmed, observing that the "general rule is that an attorney will be held liable for negligence only to his client.  In the absence of special circumstances, he will not be liable to anyone else." Id.  The rationale for the rule is the lack of privity between the attorney and the third party.  Id.  Although courts have criticized the privity rule, the Superior Court noted that the Supreme Court of Pennsylvania had reaffirmed the privity rule.  "[P]olicy considerations," the Supreme Court concluded, "compelled adherence to the rule requiring that an attorney-client relationship be shown before a cause of action can be maintained against an attorney for professional negligence." Id. (citing Guy v. Leiderbach, 459 A.2d 744, 750 (Pa. 1983)).  Moreover, those policy considerations are more potent "where the attorney is representing a client who is involved in litigation.  In such circumstances, the law is clear that the attorney owes no duty of care to the adverse party but only to his client." Id.  To hold otherwise would create a conflict between the attorney's personal interest and his client's, burden the profession, and diminish the quality of legal services rendered to the client. Id.

Because it concerned a claim of negligence against an attorney, rather than his law firm, Smith is not squarely on point.  Nevertheless, it is persuasive in disposing of this matter.  See

Legion Ins. Co. v. Doeff, No. 3174, CONTROL 051935, CONTROL 121629, CONTROL

121683, 2001 WL 1807398, at *6 (Ct. Com. Pl. June 6, 2001) (relying on Smith and holding law

firm not liable to adversary of its client for negligent infliction of emotional distress).  Like the

husband's claim in Smith, the gravamen of Ms. Gigli's claim is legal services rendered to her

adversary, Palisades, by her adversary's attorney, Mr. Cherkis.  Specifically, she alleges that

Mr. Cherkis, in representing Palisades, filed a complaint on Palisades's behalf that lacked

probable cause and violated the FDCPA.  Had W&A supervised Mr. Cherkis properly, either

through adequate training and/or internal safeguards, Ms. Gigli alleges that the lawsuit would

have been avoided.  Thus, W&A's alleged negligence pertains directly to Mr. Cherkis's

performance of his obligations to his client.  Under Smith, Mr. Cherkis owed no duty of care to

Ms. Gigli and thus could not be liable to her in negligence for advice given to or actions taken

on behalf of Palisades.  There is no reason to distinguish between Mr. Cherkis and W&A by

imposing a duty of care on W&A, subjecting it to liability for negligently supervising Mr. Cherkis

in his representation of his client and Ms. Gigli's adversary.

Moreover, Palisades was W&A's client too, and as such, W&A clearly owed Palisades a

duty of care.  On the other hand, there was no attorney-client relationship between W&A and

Ms. Gigli that would ordinarily give rise to a duty of care.  Cf. McGee v. Hyatt Legal Servs., Inc.,

813 P.2d 754, 757 (Colo. Ct. App. 1990) (law firm that represented mother in child custody

proceeding owed no duty of care, absent attorney-client relationship, to mother's child).  To

40

impose upon W&A a duty of care in favor of Ms. Gigli would create a potential conflict between W&A's and Palisades's interests because W&A would owe a duty both to its client, Palisades, and its client's adversary in litigation, Ms. Gigli.

Ms. Gigli attempts to divine a duty of care from two statutes and a rule of procedure. In this regard, she is implicitly basing her negligence claim on a violation of a statute or rule, or negligence per se. Assuming Ms. Gigli has not waived this theory for failing to assert it in her complaint, she cannot rely on negligence per se to sustain her claim against W&A.

The doctrine of negligence per se provides that a violation of a statute "establishes both duty and breach of duty where an individual violates an applicable statute designed to prevent a public harm." Minnich, 817 A.2d at 541. "Where a claim of negligence is predicated upon an alleged violation of statute, the [plaintiff must present] facts which show that the case is within the statute and must disclose the duty of care created thereby." Solomon v. Presbyterian Univ. Hosp., 530 A.2d 95, 97 n.5 (Pa. Super. Ct. 1987). "The statute or regulation must clearly apply to the conduct of the defendant." Wagner v. Anzon, Inc., 684 A.2d 570, 574 (Pa. Super. Ct. 1996) (emphasis added).

Here, Ms. Gigli contends that a duty of care in her favor is created by the Dragonetti Act; 42 Pa. Cons. Stat. Ann. § 2503(9); and Pa. R. Civ. P. 1023.1. (Pl.'s Br. 13.) None of the provisions, however, create the duty of care propounded by Ms. Gigli. As set forth above, the Dragonetti Act provides a statutory cause of action against persons who initiate any civil

proceeding without probable cause or in a grossly negligent manner and for an improper purpose.  Section 2503(9) authorizes an award of "reasonable counsel fee[s] as part of the taxable costs of the matter: . . . [to] [a]ny participant . . . because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith."  And Rule 1023.1, Pennsylvania's version of Fed. R. Civ. P. 11, requires that every pleading and other paper filed with the court be signed by an attorney, Pa. R. Civ. P. 1023.1(b); and that such signature certifies that the pleading or paper is not being filed for an improper purpose and that the pleading or paper has legal and factual support.  Pa. R. Civ. P. 1023.1(c).  Although these provisions prohibit and are intended to deter frivolous filings and other inappropriate conduct in connection with litigation, none explicitly impose a duty of care on a law firm to supervise its attorney-employees.  In order for a negligence claim to be predicated on a statute (or rule), the statute must disclose the duty of care and "clearly apply to the conduct of the defendant."  The statutes and rule do neither.  Therefore, Ms. Gigli cannot rely on a negligence per se theory to sustain her claim against W&A.

In summary, Ms. Gigli has not shown that W&A owed her a duty of care under the circumstances of this case.  As such, her negligence claim fails as a matter of law, and W&A's motion for summary judgment on this claim will be granted.

III. CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment will be granted in

part and denied in part.  An appropriate Order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PAULETTE B. GIGLI                            :
                          Plaintiff           :
                                              :
        v.                                    :         3:CV-06-1428
                                              :         (JUDGE VANASKIE)
PALISADES COLLECTION, L.L.C.,                 :
WOLPOFF & ABRAMSON, L.L.P., BRUCE             :
H. CHERKIS, ESQ.                              :
                          Defendants          :

ORDER

NOW, THIS 14th DAY OF AUGUST, 2008, for the reasons set forth in the foregoing

Memorandum, IT IS HEREBY ORDERED THAT:

1. Defendants' Motion for Summary Judgment (Dkt. Entry 27) is GRANTED IN PART

AND DENIED IN PART as follows:

        a) Defendant Wolpoff & Abramson, L.L.P.'s Motion for Summary Judgment with

respect to Count Five (Negligence) and Count Seven (Pennsylvania Fair Credit Extension

Uniformity Act) of Plaintiff's Complaint (Dkt. Entry 1-5) is GRANTED.  Judgment shall be

entered in favor of Defendant Wolpoff & Abramson, L.L.P., and against Plaintiff as to Count

Five and Count Seven of Plaintiff's Complaint.

        b) In all other respects, Defendants' Motion for Summary Judgment is DENIED.

2. A telephonic scheduling conference will be conducted on September 3, 2008 at

10:00 a.m.  Attorney John J. DiBernardino is responsible for placing the call to (570) 207-5720,

and all parties shall be ready to proceed before the undersigned is contacted.


      s/ Thomas I. Vanaskie

      Thomas I. Vanaskie
      United States District Judge